IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RONALD ARLEN TRUMBULL                                          PLAINTIFF

v.                          Civil No. 12-2195

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                 DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

Plaintiff, Ronald Trumbull, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.        Procedural Background:**

Plaintiff filed his SSI application on April 18, 2011, alleging an onset date of July 1, 2003, due to back pain, depression, and emotional problems. Tr. 10, 215-235, 271-272, 282. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 121-124, 128-129. An administrative hearing was held on April 3, 2012. Tr. 78-117. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 42 years old and possessed the equivalent of a high school education and no past relevant work. Tr. 19, 81-82, 258- 265, 283, 323.

On May 11, 2012, the ALJ found Plaintiff's degenerative disk disease ("DDD") of the lumbar spine, status post fusion, and adjustment disorder with mixed emotional features to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

P, Regulation No. 4.  Tr. 12-14.  After partially discrediting Plaintiff's subjective complaints, the ALJ

determined that he retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(a) except the claimant can only
> occasionally perform overhead work or reaching and is limited to work where
> interpersonal contact is routine, but superficial, the complexity of tasks is learned by
> experience, with several variables and use of judgment within limits, and the
> supervision required is little for routine tasks but detailed for non-routine tasks.

Tr. 14.  The ALJ then concluded that Plaintiff could perform work as a assembler (both light and

sedentary), machine tender (both light and sedentary), inspector, and clerical worker.  Tr. 19-20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied

on July 3, 2012.  Tr. 1-3.  Subsequently, Plaintiff filed this action.  ECF No. 1.  Both parties have filed

appeal briefs, and the case is now ready for decision.  ECF Nos. 10, 12.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are

presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).

Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record

contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the

court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome, or because the court would have decided the case differently.  *Haley v.

Massanari*, 258 F.3d 742, 747 (8th Cir. 2001)  In other words, if after reviewing the record it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the findings

2

of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him or her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.**   **Discussion:**

Plaintiff contends that the ALJ made the following errors: 1) failed to develop the record with regard to Plaintiff's RFC; 2) failed to apply the property weight to the opinions of the treating physicians; 3) failed to properly assess Plaintiff's credibility; and, 4) improperly concluded that

3

Plaintiff's depression and anxiety were non-severe impairments. We will consider each of these issues, although not in the exact order addressed by the Plaintiff.

### A.    Severe Impairments:

In his first point of error, Plaintiff asserts that the ALJ erred in concluding that his anxiety and depression were non-severe impairments. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508.

Records do reveal a history of treatment for anxiety disorder and dysthymia, particularly during Plaintiff's incarceration from 2000 to 2004. However, more recent records reveal no such treatment. In fact, in September 2008, the doctor at Arkansas Department of Corrections ("ADC") tapered Plaintiff off of Xanax. Tr. 536-537, 566. Treatment notes from both ADC and private physicians reveal no further treatment for anxiety and depression until Plaintiff's treatment at the Searcy Clinic in April 2011, at which time the doctor diagnosed him with adjustment disorder and assessed him with a global assessment of functioning ("GAF") score of 45. Tr. 408-413. Over a series of five court ordered sessions[2], Plaintiff's GAF increased to 50.[3] Tr. 414-417. And, by his own admission, at the time of the hearing approximately one year later, Plaintiff was taking no medication to treat his alleged depression/anxiety. Tr .94. Had Plaintiff's anxiety and depression been severe, we believe he would have consistently sought out treatment for it, even during his incarcerations.

---

[2]Records reveal that the counseling sessions were a condition of Plaintiff's parole. Tr. 408-416.

[3]A GAF of 41 to 50 is indicative of serious symptoms. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 32 (4th ed. 2000). However, contrary to Plaintiff's argument, GAF scores do not prove any work limitations or the severity of any impairment. *See Jones v. Astrue* , 619 F.3d 963, 973 (2010).

4

We also note that the medical records from 2011 reveal that Plaintiff's mental impairment was situational in nature. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (finding depression not severe where related to marital issues and improved with treatment). He was noted to be having a hard time adjusting to life outside of prison and consistently reported trust issues.

Plaintiff contends that he was not able to obtain mental health treatment following his release from prison, due to his financial situation and lack of transportation. However, there is no evidence to indicate that Plaintiff ever even attempted to find any low cost or no cost medical treatment for his alleged disability. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999). And, in spite of his alleged lack of transportation, he was able to attend narcotics anonymous and alcoholics anonymous meetings three times per week and church weekly. As such, we can not say that his failure to obtain consistent treatment is excused by his financial status. Accordingly, we find substantial evidence supports the ALJ's determination that Plaintiff's mental impairment was non-severe.[4]

**B.     Credibility:**

Plaintiff's next argument concerns the ALJ's determination that his subjective complaints of pain were not totally credible. The ALJ was required to consider all the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of medication; and, 5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

---

[4]We also note that the ALJ did include some mental limitations in his RFC assessment.

The evidence reveals that Plaintiff injured his back at work in May 2002, resulting in hernaitions at the L3-4, L4-5, and L5-S1 level with the most severe protrusion occurring at the L5-S1 level. Tr. 327-331, 351. After conservative treatments failed, Plaintiff underwent surgery on March 17, 2003. Tr. 361. However, less than three weeks post surgery, he was incarcerated in the Oklahoma Department of Corrections until May 2005. Tr. 336. There are no records to indicate the treatment he received while incarcerated, and we note that benefits are not payable to any "individual for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense." *See* U.S. C. § 402 (x)(1) (A)(i) (1993) (amended 1994). However, discharge papers reveal that he was taking Lortab, Motrin, Phenergan, Elavil, and Tegretol. Tr. 336.

Following his release from prison, Plaintiff continued to experience chronic back pain. An MRI in December 2005 revealed a continuing protrusion and stenosis at the L4-5 and L5-S1 levels. Tr. 363. An EMG conducted in February 2006 showed evidence of active as well as chronic radiculopathy on the left side, verifying his complaints.. Tr. 361-362, 365-366. Dr. Eugene Field indicated that the only real option for him would be to have a "massive operation consisting of complete decompression, interbody, and lateral fusion at both bottom levels." Tr. 363. He then restricted Plaintiff to lifting no more than 50 pounds and pushing/pulling no more than 75 pounds. Tr. 361-362.

No further treatment was sought out until October 2006, when Plaintiff went to Dr. David Hicks for a second opinion. Tr. 384-385. Dr. Hicks diagnosed Plaintiff with left sciatica and possible painful internal disk derangement and motion segment dysfunction at the L2-3, L3-4, L4-5, and L5-S1 levels. He gave Plaintiff the option of medication and anti-inflammatory therapy or surgery. Dr. Hicks also indicated that Plaintiff could continue to work with a 50 pound weight restriction. Plaintiff did not return for treatment until January 2007. Tr. 387. At this time, Dr. Hicks prescribed Lortab and Flexeril, and indicated Plaintiff could safely work with a lifting/carrying restriction of 50 pounds. An MRI conducted

6

in February revealed multilevel degenerative disk disease at the L2-3, L3-4, L4-5, and L5-S1 levels with some mild to moderate neural foraminal stenosis, particularly at the L4-5 level.  Tr. 390.  However, Dr. Hicks still could not discern the exact cause for Plaintiff's pain, so he referred him to Dr. Gerald Hale for lumbar discograms.  In March, a five level discogram was performed showing severe pain in the lumbosacral region that extended into both hips, a central disk protrusion with epidural spread at the L3-4 level, a full thickness posterior tear at the L4-5 level, and diffuse annular disruption with epidural spread at the L5-S1 level. Tr. 392.  Dr. Hicks explained to Plaintiff that his problem, while quite painful, was not dangerous.  And, he recommended that Plaintiff undergo decompensation and fusion at the L3-4, L4-5, and L5-S1 levels with tangent milled bone prosthesis, bone morphogenic protein,  and legacy spinal instruments. Tr. 392.  Plaintiff underwent surgery on May 1, 2007.  Tr. 394.  Post operatively, it appears that Plaintiff progressed well.  Tr. 394-405.  In September, he reported less pain than before surgery, but indicated that his pain was of a different intensity and quality than before surgery.  X-rays showed a healed fusion with instrumentation in good position.  Tr. 398.  By November, Plaintiff had reached maximum medical improvement.  Tr. 400.  He had completed physical therapy, and was taking Talwin NX (a narcotic pain medication) and Soma.  Dr. Hicks referred him for a functional capacity evaluation, which resulted in the following work restrictions: no lifting or carrying of more than 45 pounds on a regular basis.  Tr. 402.  It was noted that Plaintiff was a candidate for job placement assistance or if necessary retraining and rehabilitation.  In December, Plaintiff voiced an interest in having his hardware removed, but x-rays suggested it was too early this procedure, indicating that this might be a possibility in four months.

On February 4, 2008, Dr. Hicks opined that Plaintiff had suffered a total impairment to his body of 55 percent.  Tr. 403-405.  He also noted a 10 percent class II impairment due to depression, but noted that his impairment level was compatible with "most useful functioning with regard to activities of daily living, social functioning, concentration, and adaptation.  Dr. Hicks also indicated that Plaintiff's

condition was stable and chronic and had reached maximum medical recovery.  He was doubtful that any further therapy would substantially alter Plaintiff's clinical circumstance.  However, Dr. Hicks stated that Plaintiff would require ongoing medication in the form of Talwin and Soma and would likely necessitate future surgery for hardware removal.  Tr. 403-405.  Plaintiff was noted to be restricted to 35 degrees of flexion, 5 degrees of extension, and 5 degrees of left lateral bending.  He also had weakness in the left leg at the L4, L5, and S1 distributions.  However, Dr. Hicks opined that Plaintiff could perform a light-duty job with vocational retraining.  *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that he could not work at any job).

Plaintiff was again incarcerated in September 2008, at which time he was tapered off his dosage of Xanax.[5]  Tr. 536-537, 566.  During his incarceration, Plaintiff voiced many complaints concerning his back pain.  Tr. 467-570.  Although x-rays continued to show only postsurgical changes with intact hardware, Plaintiff was limited with regard to work and activity.  Tr. 570.  Initially he was restricted to lifting no more than 30 pounds for no more than 8 hours per day with no prolonged crawling.  Tr. 467, 270-472, 567.  But, by July 2010, he restrictions had included no prolonged crawling, stooping, running, jumping, walking, standing, lifting in excess of 15 pounds, performing overhead work in excess of 5 hours per day, requiring strenuous physical activity for more than 4 hours per day, or working on unlevel terrain.  Tr. 468-476, 516.

In February 2011, while incarcerated, Plaintiff slipped and fell in the kitchen, landing flat of his back.  Tr. 504, 538.  Muscle spasms were noted on the right side of his lower back with a decreased range of motion.  He was prescribed Methocarbamol and restricted from duty, sports, and weight lifting for 3 days.  However, the doctor indicated that he *must* walk during yard call.  Plaintiff was released from prison on April 5, 2011, but failed to seek out any additional medical treatment for his back.  *See Hutton*

---

[5]However, the evidence does not indicate that he had an active prescription for Xanax.

8

*v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments).

On June 16, 2011, Plaintiff underwent a general physical exam with Dr. Webber.  Tr. 441-445. The exam revealed a normal range of motion in all joints with no evidence of muscle spasm, weakness, or atrophy.  Plaintiff could hold a pen and write, touch fingertips to palm, oppose thumb to fingers, pick up a coin, stand/walk without assistive devices, walk on heel and toes, and squat an arise from a squatting position.  He also exhibited a normal grip strength in both hands.  After diagnosing Plaintiff with depression, a history of laminectomy in both the lumbar and thoracic spine with chronic back pain, radiculopathy to the legs, and abnormal weight, Dr. Webber then opined that Plaintiff had "severe" limitations.  Tr. 445.  However, given that no physical limitations were noted in the exam, the undersigned does not find this conclusion to be supported by the overall record.  *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).

As discussed in the preceding section, Plaintiff received mental health treatment at the Searcy Clinic from April 2011 until May 2011.  However, at the time of the hearing, he was taking no medication for these alleged impairments, and contended that he could not obtain medical or mental health treatment due to his financial situation.  *See Htton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments).  For the reasons discussed above, his financial status does not excuse his failure to obtain treatment.

We also note that the Plaintiff worked only sporadically prior to his onset date.  *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (lack of work history may indicate a lack of motivation to work rather than a lack of ability).  And, he was incarcerated from 2003 to 2006 and again from 2008 to 2011, calling into question whether his unemployment was actually a product of his incarceration

AO72A
(Rev. 8/82)

rather than his impairments.  Records do indicate that he worked a temporary part-time job in 2011, dumping recycle bins. Tr. 84-85.  *See Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992) (part-time work may demonstrate ability to perform substantial gainful employment).

There also discrepancies between Plaintiff's testimony and his May 2011 adult function report. On the function report, Plaintiff indicated that he could care for his personal hygiene; do his community service; prepare meals daily; clean; do the laundry; ride in a car; shop in stores for food and hygiene; pay bills; count change; handle a savings account; use a checkbook/money order; hunt, fish, and camp occasionally; play cards with friends; talk to his family on the telephone; attend narcotics anonymous and alcoholics anonymous meetings three times per week; and, attend church every Sunday. Tr. 273-280.  Further, he stated that he followed written instructions "fine," spoken instructions "decent," and got along with authority figures.  However, at the hearing, Plaintiff changed his story, testifying that he took only three showers per week, helped his mother with dishes and laundry when he could, and prepared only microwaveable items. Tr. 97-98. He also indicated that his symptoms required him to nap at least once daily.  Tr. 92.  Our review of the record reveals no evidence of a deterioration in his condition that would support these newly imposed restrictions.  Tr. 992.  *See Polaski*, 739 F.2d at 1322 ("Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."). In fact, Plaintiff failed to seek out any medical treatment for his back impairment following his release from prison.  *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the court noted that plaintiff had not sought treatment from any physician in the seven months prior to administrative hearing).  And, he testified that he was taking only Tylenol and Ibuprofen for his pain. Tr. 90-91.  *See* 20 C.F.R. § 404.1529(3)(iv) (use of nonprescription medication is a relevant consideration when evaluating subjective complaints.).

Accordingly, after reviewing the entire record, the undersigned is convinced that the ALJ properly analyzed Plaintiff's subjective complaints and provided sufficient reasons for his determination that Plaintiff's allegations were not totally credible.

**C.    Failure to Develop Record:**

In his third point of error, Plaintiff asserts that the ALJ should have developed the record with regard to his mental impairments prior to determining Plaintiff's RFC.  The ALJ does owe a duty to a claimant to develop the record fully and fairly to ensure her decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  However, in determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001).  The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).        Contrary to Plaintiff's allegation, there was no need for further development of the record in this case.  As previously discussed, Plaintiff's medical history reveals large gaps during which Plaintiff failed to seek out treatment for his alleged depression and anxiety.  From 2008, when he was weaned off Xanax, until April 2011, Plaintiff was incarcerated and could have received mental health treatment free of charge.  However, the records reveal that he failed to do so.  When Plaintiff presented at the Searcy Clinic in 2011, he admitted that he was taking no psychotrophic medications.  And, we note that he attended a total of five session at Searcy Clinic as treatment for his adjustment disorder, directly related to his transition to life outside of prison.  At the administrative hearing, Plaintiff again admitted that he was not taking any medication to treat his depression/anxiety.

Plaintiff places a great deal of emphasis on his GAF scores, criticizing the ALJ for failing to take these into consideration.  However, we note that the ALJ acknowledged these scores, and properly

discounted them.  As previously noted, the ALJ is not bound by these scores.  *See Jones*, 619 F.3d at 973.

Accordingly, we can not say that further development of the record was necessary.

> **D.    RFC:**

Next, Plaintiff opposes the ALJ's RFC determination.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence)

Plaintiff asserts that the ALJ should have included limitations such as unscheduled breaks, excessive absenteeism, and an inability to maintain focus and concentration within his assessment.  We disagree.  As discussed in the preceding sections, Plaintiff's work history, failure to seek out consistent medical treatment, lack of objective evidence to support his claims, and daily activities discredit his subjective allegations.  Further, the record also contains two non-examining consultative assessments.  On June 9, 2011, Dr. Brad Williams, a non-examining consultant completed a psychiatric review

AO72A
(Rev. 8/82)

technique form and a mental RFC assessment.  Tr. 418-435.  After reviewing only Plaintiff's medical records, he determined Plaintiff would be moderately limited with regard to maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and, accepting instructions and responding appropriately to criticism from supervisors.  He then concluded Plaintiff could perform work where the interpersonal contact is routine but superficial; complexity of the tasks is learned by experience with several variables and judgment within limits; and, the supervision required is little for routine tasks but detailed for non-routine tasks.

On July 11, 2011, Dr. Bill Payne, a non-examining consultant opined that the Plaintiff was limited to light work.  Tr. 453-460.

We are also cognizant of Dr. Webber's examination revealing no physical limitations or restrictions, and his indication that Plaintiff would have "severe" impairments.  However, as previously discussed, Dr. Webber did not explain what he meant by "severe" or how someone with a totally normal physical exam could have "severe" limitations.  And, none of the remaining medical evidence in the record supports such an assessment.  Plaintiff's treating doctor while incarcerated limited him with regard to assignments requiring prolonged crawling, stooping, running, jumping, walking, standing, lifting in excess of 15 pounds, performing overhead work in excess of 5 hours per day, requiring strenuous physical activity for more than 4 hours per day, and working on unlevel terrain.  Tr. 468-476, 516.  Further, his surgeon, Dr. Hicks, opined that Plaintiff would require "vocational retraining to place him in a light-duty job."  A functional capacity evaluation also revealed that Plaintiff could not lift or carry more than 45 pounds on a regular basis.  Tr. 402.  Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff could perform light work involving only occasional overhead work or reaching.  There is simply insufficient evidence to support the additional limitations Plaintiff alleges should have been included in the assessment.

13

Although the ALJ did not find Plaintiff's adjustment disorder to be a severe impairment, he did properly include mental limitations in his RFC.  Therefore, we also find substantial evidence to support the ALJ's determination that Plaintiff could perform work where the interpersonal contact is routine, but superficial; the complexity of tasks is learned by experience, with several variables and use of judgment within limits; and, the supervision required is little for routine tasks but detailed for non-routine tasks.

### E.   Treating Physicians:

Lastly, Plaintiff disputes the weight the ALJ gave to the assessment of Dr. Webber and the mental health provider at Searcy Clinic.  Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight.  *Id*. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted).  Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

As previously discussed, Dr. Webber's assessment is internally inconsistent and is contradicted by other evidence in the record indicating that Plaintiff is capable of performing light work.  Further, the treatment records from Searcy Clinic indicate that Plaintiff was not taking any medication for his alleged mental impairments, nor had he obtained any mental health treatment during the previous three years during which he was incarcerated and had access to these services.  Plaintiff was diagnosed with adjustment disorder and appeared to be responsive to therapy, requiring no further mental health treatment.  Accordingly, we find substantial evidence to support the ALJ's determination that Dr. Webber and the provider at Searcy Clinic were not entitled to controlling weight.

14

IV.     **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus recommends that the decision be affirmed, and Plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of May 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)